[Sac. No. 2121.   Department One.—April 7, 1915.]

## RUBY D. BROWN, Respondent, v. EVA S. BROWN, Administratrix of the Estate of John S. Brown, Deceased, Appellant.

DIVORCE—INTERLOCUTORY DECREE—EFFECT ON PROPERTY RIGHTS OF SPOUSES.—With respect to the rights of a husband and wife, respectively, in the property of the other, an interlocutory decree of divorce, given under the provisions of sections 131 and 132 of the Civil Code, does not sever the marriage relation, and they remain in that relation until the final decree of divorce is pronounced.

ID.—FINAL DECREE—OPERATION AS TO COMMUNITY PROPERTY.—Where the final decree of divorce makes no disposition of the community property, the parties become tenants in common of such property. If the cause of divorce was neither cruelty nor adultery, each will thereafter be the owner of an undivided one-half of the community property without further order of the court, but if given for either of said causes, the respective interests of the parties in the community property left undisposed of is subject to the determination of a court of competent jurisdiction in a subsequent action or proceeding.

ID.—COMMUNITY PROPERTY ACQUIRED AFTER INTERLOCUTORY DECREE.—Property acquired by the husband otherwise than by gift, devise, or descent, after the divorce action is begun and before the final decree, is community property, notwithstanding it was acquired after the interlocutory decree.

ID.—EFFECT OF JUDGMENT BY DEFAULT AGAINST DEFENDANT—MATTERS ADJUDICATED.—Where a defendant is served with summons and complaint stating the facts upon which he is required to act, and he makes default, he is presumed to admit all the facts which are well pleaded in the complaint. The judgment which follows upon this sort of admission is, in contemplation of law, a complete adjudication of all the rights of the parties embraced in the prayer

CLXX Cal.—1

for relief and arising from the facts stated in the complaint, including the facts in his favor as well as those against him.

ID.—ALLEGATION IN COMPLAINT OF NONEXISTENCE OF COMMUNITY PROPERTY—DEFAULT OF DEFENDANT—FINAL JUDGMENT NOT MENTIONING PROPERTY RIGHTS.—In an action by a wife for a divorce upon a complaint which alleges that there is no community property, if the defendant after personal service makes default and final judgment is rendered dissolving the marriage but making no order, directions or even mention of property, or other rights, such judgment becomes, in effect, a contract between the parties that the judgment shall be final with respect to everything properly embraced within the allegations of the complaint and in the prayer for relief, and operates as an adjudication that at the time the action was begun there was no community property.

ID.—EFFECT OF JUDGMENT ON COMMUNITY PROPERTY ACQUIRED AFTER COMMENCEMENT OF ACTION.—Such a judgment, however, is not an adjudication of the nonexistence of community property which was acquired by the husband after the commencement of the action and the rendition of the interlocutory decree, notwithstanding the parties might have litigated their rights as to such property in the divorce action at the time of the rendition of the final decree. Consequently such judgment does not prevent the wife from subsequently claiming an interest in the community property so acquired.

ID.—HUSBAND AND WIFE — WRITTEN SEPARATION AGREEMENT—EXECUTED ORAL AGREEMENT FOR ANNULMENT.—Where a husband and wife, who had executed a written separation agreement which purported to release her rights in the community and to declare after acquired property the separate property of the person acquiring it, subsequently agreed to become and were reconciled, and thenceforth for several months lived and cohabited as husband and wife, and in pursuance of the agreement so to live further orally agreed to and did set aside and annul the separation agreement, such conduct rendered the oral agreement executed, and it was a sufficient cancellation of the previous written agreement of separation.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Harris & March, and H. C. Beach, for Appellant.

J. C. Sims, Myer Jacobs, and T. E. Pawlicki, for Respondent.

SHAW, J.—The object of the plaintiff's action herein is to establish her title as tenant in common in eight hundred acres of

land of which John S. Brown died seized, and to be let into
possession thereof in common with the defendant, who is the
administratrix of the estate of said decedent. The court be-
low made findings and gave judgment in favor of the plain-
tiff. The defendant appeals from the judgment and claims
that it is not sustained by the findings.

The plaintiff and the decedent, John S. Brown, intermar-
ried on May 1, 1903, and remained in the relation of hus-
band and wife until June 25, 1909, when the marriage was
dissolved by a final decree of divorce in the superior court of
San Francisco. The interlocutory decree on which the final
decree was founded, was entered on June 22, 1908. John
S. Brown acquired the land in controversy by conveyances
made to him on December 31, 1908. It was not acquired
either by gift, devise, or descent. This, it will be noted, was
after the interlocutory decree of divorce and before the final
decree. The plaintiff's claim is based in part on certain
rules of law, which have been settled by former decisions of
this court and which it is proper here to state. With re-
spect to the rights of a husband and wife, respectively, in the
property of the other, an interlocutory decree of divorce,
given under the provisions of sections 131 and 132 of the
Civil Code, does not sever the marriage relation and they re-
main in that relation until the final decree of divorce is pro-
nounced. (*Estate of Dargie,* 162 Cal. 51, [121 Pac. 320];
*Periera* v. *Periera,* 156 Cal. 9, [134 Am. St. Rep. 107, 23 L.
R. A. (N. S.) 880, 103 Pac. 488]; *Grannis* v. *Superior Court,*
146 Cal. 250, [106 Am. St. Rep. 23, 79 Pac. 891].) The
theory of these cases seems to be that the provision for inter-
locutory decrees and the subsequent delay of one year before
the entry of a final decree was intended to operate as a
method of prolonging the action, so as to prevent the divorce
from being hastily accomplished, and that the interlocutory
decree, so far as the termination of the marriage relation is
concerned at least, is a mere step in the proceedings. Where
the final decree of divorce makes no disposition of the com-
munity property, the parties become tenants in common of
such property. If the cause of divorce was neither cruelty
nor adultery, each will thereafter be the owner of an un-
divided one-half of the community property without further
order of the court, but if given for either of said causes, the
respective interests of the parties in the community property

left undisposed of is subject to the determination of a court of competent jurisdiction in a subsequent action or proceeding. (Civ. Code, sec. 146, subds. 1 and 2; *DeGodey* v. *Godey,* 39 Cal. 162; *Biggi* v. *Biggi,* 98 Cal. 38, [35 Am. St. Rep. 141, 32 Pac. 803]; *Kirschner* v. *Dietrich,* 110 Cal. 505, [42 Pac. 1064].) The divorce in this case was rendered upon the ground of willful neglect on the part of the husband.

That property acquired by the husband otherwise than by gift, devise, or descent after the action is begun and before the final decree is community property is manifest from a consideration of the law defining such property and the effect of sections 131 and 132 of the Civil Code. The office of the interlocutory decree, under section 131, is merely that of "declaring that the party in whose favor the court decides is entitled to a divorce." This stands for a year. In the meantime neither party, alone, may dismiss the action. After the year the final decree may be given granting the divorce, and it is at that time that the code specifies (sec. 132), that the court may give "such other and further relief as may be necessary for the complete disposition of the action." As we have seen, the marriage *status* remains until the final decree. Such property acquired after the interlocutory decree and before final decree is acquired "after marriage" and before its termination and is therefore community property. (Civ. Code, secs. 163, 164.) There is nothing anywhere in the statute that will justify any distinction, in this respect, between property acquired before the suit is begun and that acquired afterward during the existence of the marriage relation, or to sanction the theory that the interlocutory decree affects the character of property acquired afterward and not disposed of thereby.

Under the rules just stated, we think it must be conceded that the plaintiff is seized of an undivided one-half of this property, unless it shall appear that the matter was adjudicated otherwise by the decree of divorce. For the consideration of this question a further statement of facts is necessary.

The action for divorce was begun on May 23, 1908. The complaint alleged "that there is no community property" and that Brown was worth about five hundred dollars, was in receipt of a professional income of two hundred and fifty dollars a month, and was able to support the plaintiff. There was no prayer for alimony or for an allowance for the sup-

port of the plaintiff. The defendant, Brown, was duly
served with summons and complaint and made default in the
action, whereupon the court, upon evidence produced in sup-
port of the allegations of the complaint, made the interlocu-
tory decree as above stated. This decree recited that all the
allegations of the complaint were sustained by the testimony
and were true; it adjudged that the plaintiff was entitled to
a divorce and declared that at the time of the final decree the
court should "grant such other and further relief as may be
necessary to a complete disposition of this action." It did
not mention the subject of community property, or property
rights of any kind. No other or further pleadings were
filed and at the expiration of the year the final decree was
made upon the motion of Ruby D. Brown and upon the rec-
ords and papers in the case. It adjudged the dissolution of
the marriage, and made no order, direction, or even mention
of property or other rights.

It is earnestly contended by the respondent that the final
decree is of no force whatever upon the right of the plaintiff
in the property of the husband. In this we think the plain-
tiff is mistaken. Where a defendant is served with a sum-
mons and complaint stating the facts upon which he is re-
quired to act, and he makes default, he is presumed to ad-
mit all the facts which are well pleaded in the complaint.
The judgment which follows upon this sort of admission is,
in contemplation of law, a complete adjudication of all the
rights of the parties embraced in the prayer for relief and
arising from the facts stated in the complaint, including the
facts in his favor as well as those against him. The defend-
ant here is presumed to have acceded to the proposition em-
braced in the complaint and to have consented that plaintiff
should obtain the relief therein prayed for, upon the condi-
tions and facts set forth in the complaint. The proceeding is
equivalent to a statement by Brown to plaintiff that he did
not object to a divorce for the cause alleged, based upon the
theory that there was no community property existing at the
time the action was begun. When judgment is rendered
upon such a complaint and default, it becomes, in effect,
a contract between the parties that the judgment shall be
final with respect to everything properly embraced within the
allegations of the complaint and in the prayer for relief.
(1 Freeman on Judgments, sec. 330; *Hoh* v. *Hoh,* 84 Wis. 378,

[54 N. W. 731].) Although the final decree is silent as to property, it nevertheless operates as an adjudication that at the time the action was begun there was no community property. (*Thompson* v. *McKay,* 41 Cal. 227; *Champion* v. *Wood,* 79 Cal. 17, [12 Am. St. Rep. 126, 21 Pac. 534.].)

This proposition, however, does not determine the case. The plaintiff does not here seek an interest in community property existing when the action for divorce was begun; she asserts an interest in that which came into existence after the interlocutory decree therein was given. The general rule that a judgment is conclusive, not only as to that which is actually determined, but also as to every other matter which the parties might have litigated in the action, is not always applicable literally. Mr. Freeman, on this subject says: "It may be that the plaintiff might have united other causes of action with that set out in his complaint, or that the defendant might have interposed counterclaims, cross-bills, and equitable defenses, *or either of the parties may have acquired new rights pending the litigation,* which might, by permission of the court, have been pleaded by supplemental complaint or answer, and therefore might have been litigated in the action. But as long as those several matters are not tendered as issues in the action, they are not affected by it." (Italics ours.) And further: "Thus in an action to recover real estate, the defendant cannot put in evidence a title acquired, *pendente lite,* unless he has pleaded it by a supplemental answer (see *Bagley* v. *Ward,* 37 Cal. 129, [99 Am. Dec. 256]); and therefore where he had not so pleaded it, he is not concluded from asserting it in a subsequent action." (1 Freeman on Judgments, sec. 249.) Pertinent to this point is the following from section 329 of the same volume: "It is well settled that the issues in a case ordinarily refer to the beginning of the suit, and that matters occurring during its pendency are not in issue, and cannot be received in evidence, unless under some supplemental pleading filed by permission of the court. So far as the plaintiff is concerned, no doubt he is not estopped from asserting any title acquired after the commencement of the action, because he must generally recover upon the cause of action held by him at that time, and cannot be aided by rights of action arising afterwards."

These principles have been followed in this state. Thus in *Maddux* v. *County Bank,* 129 Cal. 665, [79 Am. St. Rep. 143,

62 Pac. 264], the defendant in a foreclosure judgment was allowed, by a subsequent action, to recover money which the foreclosure plaintiff had received from collateral held by it as security for the mortgage debt, where it appeared that the money had been so received after the action of foreclosure was begun and before the foreclosure judgment, and had not been then credited so as to reduce the judgment, and that the defendant had not appeared and pleaded the same as part payment. In *People's Bank* v. *Hodgdon,* 64 Cal. 97, [27 Pac. 938], the defendant against whom a judgment in ejectment had been rendered in a former action between the parties, the title having been there put in issue, was permitted to assert a title acquired by her after the issues were framed in the former action and two years before the judgment against her therein. (See, also, *People* v. *Holliday,* 68 Cal. 443, [9 Pac. 655]; s. c. 93 Cal. 245, [27 Am. St. Rep. 186, 29 Pac. 54]; *Valentine* v. *Mahoney,* 37 Cal. 396; *Hentig.* v. *Redden,* 26 Am. St. Rep. 97, Note.)

Upon the same principle we think it is clear that the judgment of divorce will not prevent plaintiff from claiming an interest in community property acquired after the beginning of the action and before the final judgment, if there was no issue tendered in that action concerning such property. The record shows that no adjudication was made in that case barring the rights of the wife in the property here in controversy. It follows that the court below properly decided that the plaintiff was entitled to an undivided one-half of the property.

With regard to the separation agreement made by Brown and wife in 1906, which purported to release her rights in the community and to declare subsequently acquired property the separate property of the person acquiring it, and which it is claimed bars the present action of plaintiff, we need only say that the findings declare that some four months after its execution the parties agreed to become and were reconciled, that they thenceforth for several months lived and cohabited together as husband and wife, and that in pursuance of the agreement to so live they further orally agreed to and did set aside and annul said agreement. This was an executed oral agreement and it was a sufficient cancellation of the previous written agreement of separation. (Civ. Code, sec. 1698; *Pearsall* v. *Henry,* 153 Cal. 314, 325, [95 Pac. 154, 159].)

Furthermore, it has been said that the reconciliation coupled with cohabitation in pursuance thereof operates to avoid the agreement for separation. (*Wells* v. *Stout*, 9 Cal. 498; *Sargent* v. *Sargent*, 106 Cal. 546, [39 Pac. 931].) This, however, it is not necessary to decide.

We perceive no ground for the contention that the plaintiff is estopped by laches.

The judgment is affirmed.

Sloss, J., and Angellotti, C. J., concurred.