# United States Court of Appeals for the Federal Circuit

---

**ENOVSYS LLC,**
*Plaintiff-Appellee,*

v.

**NEXTEL COMMUNICATIONS, INC., NEXTEL OF CALIFORNIA, INC.,
NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC.,
NEXTEL OF NEW YORK, INC., NEXTEL SOUTH CORPORATION,
NEXTEL OF TEXAS, INC., NEXTEL WEST CORP.,
SPRINT NEXTEL CORPORATION, SPRINT COMMUNICATIONS COMPANY L.P.,
SPRINT SPECTRUM L.P., AND SPRINT SOLUTIONS, INC.,**
*Defendants-Appellants.*

---

2009-1167

---

Appeal from the United States District Court for the Central District of California in case no. 06-CV-5306, Judge Ronald S.W. Lew.

---

Decided: August 3, 2010

---

GREGORY S. DOVEL, Dovel & Luner LLP, of Santa Monica, California, argued for plaintiff-appellee. With him on the brief was JOHN JEFFREY EICHMANN.

DONALD R. DUNNER, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendants-appellants. With him on the brief was ANDREW J. VANCE.

---

Before NEWMAN, BRYSON, and PROST, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* PROST.
Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* NEWMAN.

PROST, *Circuit Judge.*

In this patent infringement case, we begin by deciding the effect of a state-court divorce decree on a patent owner's standing to sue. Because we conclude that the patent owner Enovsys LLC ("Enovsys") had standing, we reach the challenged claim constructions.

The allegations of infringement are based on two inventions that use global positioning satellites ("GPS") and ground control stations to determine the physical location of mobile devices, like pagers and cellular telephones. Depending on the security settings chosen by the user, the invention selectively discloses the physical location of the mobile device to certain users or entities, while blocking disclosure to others. Entities that might request a mobile device's location include programs that provide driving directions, updates on local weather, and restaurant suggestions. Enovsys brought this suit against Sprint Nextel Corporation and its various subsidiaries (collectively "Sprint Nextel"), contending that Sprint

Nextel's iDEN and CDMA wireless networks infringed two patents covering these inventions. After a nine-day trial, the jury found Sprint Nextel infringed both patents and awarded approximately $2.78 million in damages. The district court then denied Sprint Nextel's renewed motion to dismiss the case for lack of standing, motions for judgment as a matter of law ("JMOL"), and motions for a new trial.

Sprint Nextel now appeals. According to Sprint Nextel, this case should have ended long ago, because Enovsys is not the sole owner of the asserted patents and failed to join the other (alleged) part owner, Fonda Whitfield ("Whitfield"). Whitfield is the ex-wife of Mundi Fomukong ("Fomukong"); Fomukong is the manager of Enovsys and one of the patents' co-inventors. Sprint Nextel also argues that it is entitled to JMOL under the correct construction of various claim terms in the patents.

We affirm. The ownership issue, and thus the question of standing, is resolved by a state-court judgment—namely, a California divorce decree. Giving this divorce decree the preclusive effect required, we conclude that Whitfield had no ownership interest in the asserted patents at the time this case was filed, or anytime thereafter. At all relevant times, Enovsys alone owned both patents. Accordingly, Enovsys had standing to bring and maintain this suit without joining Whitfield. On the merits, we affirm the challenged claim constructions.

BACKGROUND

Mundi Fomukong is manager and part owner of Enovsys. He is also the co-inventor of the two patents asserted in this case, U.S. Patent No. 5,918,159 ("'159 patent") and U.S. Patent No. 6,560,461 ("'461

patent"). Before conceiving of the inventions claimed in these patents, Fomukong married a woman named Fonda Whitfield in California. Fomukong and Whitfield were still married in 1997, when Fomukong and his co-inventor filed a patent application that later issued as the '159 patent. Two years later, Fomukong and his co-inventor filed a second patent application that issued as the '461 patent. This second application was styled as a continuation-in-part of the '159 patent.

The '159 patent issued in 1999. Approximately two years later, Fomukong and Whitfield filed for divorce in California. There are two different ways of getting a divorce in California, regular dissolution or summary dissolution. In a regular dissolution, either party may request a hearing or trial to settle disputed issues. Either party may appeal the court's decision or request a new trial. Summary dissolution, by contrast, is California's version of a quickie divorce. In a summary dissolution, there is no hearing or trial before a judge. Both parties give up their right to appeal the court's decision, although either may later move to set aside the judgment for fraud, duress, accident or mistake.[1] Cal. Fam. Code §§ 2400, 2403, 2405. The streamlined summary dissolution procedure is only available to couples that meet certain requirements. Cal. Fam. Code § 2400. As relevant here, the couple must either (1) have no community property, or (2) have signed a property settlement agreement listing and dividing all community assets and liabilities. Any

---

[1] A court may also set aside a summary dissolution judgment for "other grounds recognized at law or in equity." Cal. Fam. Code § 2405; *see also* Cal. Civ. Proc. Code § 473. For example, a judgment must be set aside upon proof that the prerequisites for electing a summary dissolution procedure were not met. Cal. Fam. Code § 2400.

property settlement agreement must be attached to the couple's petition for summary dissolution. Under California law, all assets acquired during a marriage are presumptively community property. Cal. Fam. Code §§ 65, 760. Assets include any income earned or property created during the marriage.

Fomukong and Whitfield divorced by summary dissolution. In November 2001, they filed an official California form titled "Joint Petition for Summary Dissolution of Marriage" with the Los Angeles Superior Court. In signing and filing this petition, Fomukong and Whitfield declared that they had read and understood the booklet California publishes on summary dissolutions, aptly titled the "Summary Dissolution Information booklet." In response to the petition's question about community property, Fomukong and Whitfield checked the box next to the statement, "We have no community assets or liabilities," certifying that the statement was true under penalty of perjury. They left the other option unchecked. That option read: "We have signed an agreement listing and dividing all our community assets and liabilities and have signed all papers necessary to carry out our agreement. A copy of our agreement is attached to this petition." Consistent with their declaration that they had no community property, Fomukong and Whitfield did not attach a property settlement agreement to their petition.

Under California law, the filing of Fomukong and Whitfield's joint petition for summary dissolution triggered a six-month waiting period. Cal. Fam. Code § 2403. During that period, either party could have stopped the divorce. *See* Judicial Council of Cal., Summary Dissolution Information Booklet, Form FL-810, § III, *available at* http://www.courtinfo.ca.gov/forms/documents/fl810.pdf. To officially end the marriage, at least one of them had to

ask the court to enter judgment of dissolution after the six-month period expired. *Id.*; *see also* Cal. Fam. Code § 2403. In October 2002, Fomukong filed the requisite California form, titled "Request for Judgment, Judgment of Dissolution of Marriage, and Notice of Entry of Judgment" with the Los Angeles Superior Court. Whitfield's signature also appears on the form. Judgment was entered in October 2002; notice of the judgment was mailed to both Fomukong and Whitfield. Fomukong and Whitfield's divorce thus became final in October 2002.

Several months after Fomukong and Whitfield's divorce was finalized, the '461 patent issued. Fomukong subsequently formed Enovsys for the purpose of managing patent-related licensing and litigation. In 2006, Fomukong and his co-inventor assigned their ownership interests in the '159 and '461 patents to Enovsys. Among the rights expressly assigned to Enovsys was the right to sue for past infringement.

Enovsys subsequently filed this action against Sprint Nextel Corporation. Enovsys alleged that Sprint Nextel infringed claim 1 of the '159 patent and claims 1, 2, 23, 25 and 28 of the '461 patent. The '159 patent covers a system for determining the physical location, or global position, of a call receiver, such as a cellular telephone or pager, using a network of space satellites and ground stations. '159 patent col.1 ll.53-55; *see also id.* at col.5 ll.44-47. This system allows a subscriber to obtain location information using his cellular phone or pager. Alternatively, the network may provide some entities with the location of the call receiver, while blocking others from receiving that information. *Id.* at col.1 ll.55-60.

The asserted claims of the '461 patent cover systems for disclosing a mobile device's physical location only to

authorized requests. The invention maintains the security of a mobile device's location data through two authorization steps, one at the network level, the other at the individual subscriber level. First, the system verifies that the source is "pre-authorized" to obtain location information from the network. '461 patent col.4 ll.49-60; *see also id.* at col.11 ll.5-9. If the source is pre-authorized to access the network, the invention then determines whether the individual subscriber has authorized the network to disclose the mobile device's location. This preference is stored on the network as a "location information disclosure instruction." Based on this instruction, the invention either allows or blocks the request. If allowed, the invention obtains and sends the mobile device's location. Otherwise, the invention sends a message that the request has been blocked. *Id.* at col.5 ll.4-30.

According to Enovsys, Sprint Nextel infringed these patents by selling "location-enabled devices and location-based services." Specifically, these "location-enabled devices and location-based services" were Sprint Nextel's Integrated Digital Enhanced Network ("iDEN") and Code Division Multiple Access ("CDMA") systems. The iDEN and CDMA systems are separate wireless networks that use different technological standards to provide mobile devices, like cellular telephones, with a variety of services, such as voice communications, messaging, digital two-way radio, and data services. Sprint Nextel counterclaimed, seeking a declaratory judgment that the patents were invalid and unenforceable.

Sprint Nextel also moved to dismiss the case, arguing that Enovsys lacked standing to sue because it failed to join Whitfield, Fomukong's ex-wife and co-owner of the patents-in-suit. According to Sprint Nextel, Whitfield

acquired an ownership interest in the '159 and '461 patents because Fomukong filed both patent applications during their marriage and patents are community property under California law. The district court denied Sprint Nextel's motion to dismiss, concluding that Enovsys had full legal title to the patents and that any claims by Whitfield or Sprint Nextel had to be adjudicated first in California state court.

After resolving the threshold question of its jurisdiction, the district court construed various terms in the '159 and '461 patents. Two are relevant to this appeal: the "means to resolve" limitation in the '159 patent and the "pre-authorized" limitation in the '461 patent.

In its entirety, claim 1 of the '159 patent reads as follows:

> A satellite paging communication system with means to locate the global position of a call receiver unit comprising:
>
> > space satellites and terrestrial stations, some of which are adapted for the purpose of transmitting paging information and some of which, are adapted for the purpose of transmitting positioning information;
> >
> > ground control stations for processing the said information and controlling the actions of the paging network;
> >
> > the call receiver or pager having *means to resolve* a global position from satellites or earth based communication means;

> the system divulging to certain or all callers the global location of a callee in possession of the said call receiver while blocking such information from being divulged to certain or all other callers.

'159 patent col.8 ll.45-61 (emphasis added).

The district court found that "means to resolve" in the '159 patent invoked 35 U.S.C. § 112, ¶ 6. The court then proceeded to determine that the claimed function was "to resolve a global position from satellite or earth based communication means." Based on its examination of the specification, the court determined that the corresponding structure for this function was a "transceiver, *connecting circuitry*, CPU, satellite receiving means, terrestrial receiving means, decoders, and temporary storage." Neither party objected to how the district court construed this means-plus-function limitation, or suggested a more specific definition of its structure was necessary. Sprint Nextel's pre-trial briefs, proposed jury instructions, and pre-verdict JMOL were similarly devoid of any argument that the "connecting circuitry" portion of the structure should be limited to the specific embodiment in Figure 2 of the '159 patent. *See* '159 patent col.5 l.48-col.6 l.5.

The "pre-authorized" limitation appears in claims 11 and 28 of the '461 patent. Claim 11 reads as follows:

> A method for divulging or blocking the location information of a mobile remote receiving unit associated with a network comprising:

i) receiving a request at the network for location information of the mobile remote receiving unit;

ii) identifying the source of request;

iv) verifying that the source of request is *pre-authorized* to access location information of the mobile remote receiving unit at the network;

v) querying at the network for location information disclosure instruction for the mobile receiving unit;

vi) using said instruction (v) to allow or block mobile remote receiving unit location information to the *pre-authorized* source of request.

'461 patent col.11 ll.1-16 (emphases added).

Similarly, claim 28 reads on:

A communication system comprising:

a network of communication resources;

a first communication resource able to establish its location information at the network;

wherein at least a profile is maintained by the system, said profile containing the identity of a *preauthorized* resource, identity of the first communication resource and a location access field indicating

whether said *preauthorized* resource identified in the profile should be allowed/disallowed to access the location information of the first communication resource identified in said profile;

the system able to use the location access field of a first profile to deny the location information of the first communication resource to the *preauthorized* resource identified in said first profile while allowing another *preauthorized* resource identified in a second profile to access the location information of the first communication resource during the time that access is being denied to the *preauthorized* resource identified in said first profile.

*Id.* at col.14 ll.6-27 (emphases added).

The district court construed "pre-authorized" in both claims of the '461 patent to mean "authorized to submit a request in advance of determining whether the request will be granted." Sprint Nextel did not object to this definition. Similarly, at no time before or during the trial did Sprint Nextel ask the district court to clarify whether the preauthorization was for access to the network or only for access to a particular mobile device.

At trial, the dispute with respect to the '159 patent centered on whether Sprint Nextel's iDEN system contained the structure corresponding to the "means to resolve" limitation. Enovsys presented the testimony of its expert, Dr. Christopher Rose ("Dr. Rose"). Dr. Rose opined that the handset used with the iDEN system contained "connecting circuitry," which attached the

handset's computer to "all the various pieces," thus allowing the handset to resolve its global position. Similarly, on cross-examination Sprint Nextel employee Kevin Butler ("Mr. Butler") admitted that the central processing unit ("CPU") in the handset had a means for receiving and decoding satellite signals to resolve the handset's global position. Mr. Butler also testified that the handset's CPU was connected with other circuitry in the phone by microscopic wires. In response, Sprint Nextel offered the testimony of its expert, Dr. Robert Stevenson ("Dr. Stevenson"). Dr. Stevenson opined that the iDEN system lacked connecting circuitry because it did not have the same circuitry shown in Figure 2 of the '159 patent. On cross examination, however, Dr. Stevenson admitted that the district court's claim construction was "fine" and did not limit "connecting circuitry" to what was shown in Figure 2 of the '159 patent.

With regards to the '461 patent, the parties disputed whether Sprint Nextel's iDEN and CDMA systems satisfied the "preauthorized" limitation in the asserted claims. On behalf of Enovsys, expert Dr. Rose opined that both systems required an entity requesting a mobile device's location be "preauthorized" to submit the request because both the iDEN and CDMA systems require the requesting entity to provide a username and password to access their respective networks. Dr. Rose went on to explain that only those entities preauthorized to access the network could then request the location of a mobile device in that network. Enovsys also presented the deposition testimony of Sprint Nextel employee Thomas Moore ("Mr. Moore"). Mr. Moore discussed an example of an entity that requests users' location data, an application called Location Studio. Mr. Moore testified that the iDEN network first checks whether Location Studio may access the network; only after confirming that the application is

authorized to access the network is Location Studio then allowed to request a given user's location information.

The jury found that Sprint Nextel infringed claim 1 of the '159 patent and claims 11 and 28 of the '461 patent. The jury further found that both patents were not invalid. It awarded $1,664,036 in damages for the '159 patent and $599,958 in damages for the '461 patent. After trial, Sprint Nextel renewed its motion to dismiss. It also moved for post-verdict JMOL on the issue of infringement with respect to both patents. The district court denied Sprint Nextel's motions and entered judgment for Enovsys.

Sprint Nextel now appeals. We have jurisdiction under 28 U.S.C. § 1291.

ANALYSIS

Whether a party has standing to bring and maintain suit is a question of law reviewed de novo. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378-79 (Fed. Cir. 2009). Any related factual findings will be disturbed only if they are clearly erroneous. *Id.*

Because reviewing denials of JMOL motions is an issue not unique to patent law, we apply the law of the regional circuit in which this appeal would otherwise lie. *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010). The Ninth Circuit reviews denial of JMOL motions de novo. *Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 886 (9th Cir. 2002). A jury verdict "must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion." *Pavavo v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). In reviewing a verdict, the Ninth Circuit "disregard[s] evidence favorable to the

moving party that the jury is not required to believe, and may not substitute its view of the evidence for that of the jury." *Id.* (citing *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001)).

In this case, whether JMOL was properly denied turns on whether the district court correctly construed certain claim terms. Claim construction is an issue of law we review de novo. *Cybor Corp. v. FAS Techs., Inc.* 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (en banc).

Because standing is a threshold jurisdictional issue, we address it first.

## I. Standing[2]

A party's standing to sue for patent infringement derives from the Patent Act, which provides that "[a] *patentee* shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (emphasis added). "Patentee" includes not only the party to whom the patent was issued, but also the successors in title to that party. 35 U.S.C. § 100. When a patent is co-owned, a joint owner must join all other co-owners to establish standing. *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007); *see also Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed Cir. 2000); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1325 (Fed. Cir. 2010).

---

[2] Enovsys had the right to sue for infringement occurring before the 2006 assignment because the assignment agreement stated that Fomukong and his co-inventor were transferring their "right to sue and collect for past damages." The agreement thus sufficiently manifested an intent to transfer this right. *Minco Inc. v. Combustion Eng'g*, 95 F.3d 1109, 1117 (Fed. Cir. 1996).

In this case, we must decide whether Enovsys had standing to bring and maintain this suit without joining Fomukong's ex-wife, Whitfield. This question turns on whether Whitfield had any ownership interest in the asserted patents at the time this suit was filed. *See MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1375-76 (Fed. Cir. 2007); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). Before the district court, Sprint Nextel argued that Whitfield acquired an interest in the patents during her marriage to Fomukong and that this interest survived their subsequent divorce because the divorce decree did not adjudicate their community property rights. Enovsys countered that the question of ownership was conclusively determined by a valid state-court judgment, namely, Fomukong and Whitfield's California divorce decree. In holding that Enovsys had standing, the district court gave effect to the judgment of dissolution, under which Whitfield retained no community property interest in the patents. For the following reasons, we agree.

Who has legal title to a patent is a question of state law. *Akazawa v. Link New Tech.*, 520 F.3d 1354, 1357 (Fed. Cir. 2008); *see also Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1329-30 (Fed. Cir. 2001); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571 (Fed. Cir. 1997) ("It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. Yet that long has been the law."). Accordingly, we look to California law to determine who had an ownership interest in the patents after Fomukong and Whitfield's divorce in 2002.

Sprint Nextel is correct that under California law, all property acquired by a married person during marriage is presumed to be community property. *Weingarten v. Superior Court*, 102 Cal. App. 4th 268, 277 (Cal. Ct. App. 2002). This presumption applies here, because Fomukong filed the applications for the '159 and '461 patents while he was married to Whitfield. *See Lorraine v. Lorraine*, 48 P.2d 48, 54-55 (Cal. App. 3d 1935); *see also In re Marriage of Worth*, 195 Cal. App. 3d 768, 773 (Cal. Ct. App. 1987). Prior to the divorce, the patents were thus presumptively community property in which Whitfield had an undivided half-interest.

That, however, is not the end of the story. Enovsys is correct that this presumption was overcome by what Fomukong and Whitfield declared in their joint petition for summary dissolution. Their petition affirmatively states that "we [Fomukong and Whitfield] have no community assets or liabilities." Fomukong and Whitfield both signed this petition, affirming under penalty of perjury that this statement was true and correct. On the basis of this petition, a California court subsequently entered judgment of dissolution, finalizing the divorce. We now turn to the thornier issue of whether this state-court judgment is entitled to preclusive effect.

The preclusive effect of a state-court judgment in a subsequent federal lawsuit is generally determined by the full faith and credit statute, 28 U.S.C. § 1738. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995); *cf. Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (holding that the preclusive effect of a federal-court judgment is determined by federal common law). Section 1738 provides that state judicial proceedings "shall have the same full faith and credit in every

court within the United States . . . as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken." Accordingly, we look to California law to determine the preclusive effect of Fomukong and Whitfield's judgment of dissolution. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 375-76 (1996).

California law recognizes the doctrine of collateral estoppel (issue preclusion), which bars relitigation of issues decided in prior proceedings. *Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301-02 (Cal. 2002); *see also Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008). The doctrine of collateral estoppel applies if (1) the issue sought to be precluded from relitigation is identical to the issue decided in the earlier proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; and (4) the person against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier proceeding. *Lucido v. Superior Court*, 795 P.2d 1223, 1225-26 (Cal. 1990); *see also Sutphin v. Speik*, 99 P.2d 652, 655-56 (Cal. 1940). In other words, a divorce decree is res judicata with respect to the issues that were adjudicated. *Callnon v. Callnon*, 46 P.2d 988, 990 (Cal. Dist. Ct. App. 1935).

We hold that Fomukong and Whitfield's California divorce decree is entitled to res judicata effect.[3] Sprint Nextel seeks to relitigate Whitfield's property rights in the patents, the same issue resolved by the state-court

---

[3] The related doctrines of claim and issue preclusion are collectively referred to as res judicata. *Taylor*, 128 S. Ct. at 2171.

judgment of dissolution. Fomukong and Whitfield's property rights were adjudicated by their summary dissolution because their joint petition put their property rights at issue. In a divorce proceeding, property rights are put at issue by (1) specific allegations describing such property, or by (2) an allegation that no community property existed. *Callnon*, 46 P.2d at 990 (citing *Allen v. McCrary*, 31 P.2d 388, 389 (Cal. 1934)). Fomukong and Whitfield alleged that they had no community property. The judgment of dissolution entered by the California court was based on this admission; under California Family Code § 2404, the judgment constituted a complete and final adjudication of Fomukong and Whitfield's property rights. *See* Cal. Fam. Code §§ 2404 (providing that entry of judgment of dissolution "constitutes . . . [a] final adjudication of the rights and obligations of the parties with respect to the status of the marriage and property rights"); *see also id.* § 2406(b)(6). As the California Supreme Court explained in *Brown v. Brown*, 147 P.d 1168 (Cal. 1915), a judgment based on parties' admissions constitutes a "complete adjudication of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the complaint." *Id.* at 1170. Accordingly here, as in *Brown*, although the final divorce decree was silent as to particular property, it nevertheless adjudicated the parties' rights with respect to that property because it was based on an uncontested complaint which alleged that there was no community property. *See id.*

The final requirement under California law for collateral estoppel is met because Sprint Nextel is in privity with Whitfield. *See Citizens Suburban Co. v. Rosemont Dev. Co.*, 244 Cal. App. 2d 666, 680-81 (Cal. App. Ct. 1966). In this case, privity arose from Whitfield's express assignment of any property interest she had in the pat-

ents to Sprint Nextel. *Cf. Vallely Invests., L.P. v. BancAmerica Commercial Corp.*, 106 Cal. Rptr. 2d 689, 694-95 (Cal. Ct. App. 2001); *Gulf Ins. Co. v. TIG Ins. Co.*, 103 Cal. Rptr. 2d 305, 309-10 (Cal. Ct. App. 2001). Sprint Nextel is thus barred from relitigating Whitfield's property rights in this case.[4] Pursuant to the California divorce decree, Whitfield retained no property rights in the patents, so Enovsys had standing to bring and maintain this suit.[5]

## II. Claim Construction and Infringement

We turn next to Sprint Nextel's argument that under the correct claim constructions, its systems do not infringe the '159 or '461 patents.[6]

---

[4]    Sprint Nextel also argues that we should not give preclusive effect to the California divorce decree because the judgment was obtained by fraud. *Cf. Matsushita Elec.*, 516 U.S. at 375 (holding that the federal court must decide whether "as an exception to § 1738, it should refuse to give preclusive effect to the state court judgment" (citations omitted)). We decline to do so. No federal law modifies the operation of 28 U.S.C. § 1738, and we lack jurisdiction to set aside this state-court judgment. *See Miagra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 80 (1984). Only a California state court may set aside a judgment of dissolution, after one of the parties to the judgment has filed a motion to do so. Cal. Fam. Code § 2405.

[5]    Because Whitfield had no property interest to assign, Sprint Nextel has no interest in the asserted patents. Accordingly, the district court did not abuse its discretion in denying Sprint Nextel's request to present evidence of the assignment at trial.

[6]    The dissent is correct that Sprint Nextel styled these arguments as defenses of non-infringement and

A.  The '159 Patent

Sprint Nextel argues that it is entitled to JMOL on infringement because the iDEN system does not include the same connecting circuitry shown in Figure 2 of the '159 patent.  Enovsys urges us to hold that Sprint Nextel waived this argument.  In denying Sprint Nextel's motion for post-verdict JMOL on this issue, the district court noted that it "never limited" its construction of connecting circuitry to the exact configuration shown in Figure 2 of the '159 patent.

We agree that Sprint Nextel waived any claimed error associated with the "connecting circuitry" structure: Here, as in *Eli Lilly & Co. v. Aradigm Corp.*, Sprint Nextel never requested the district court construe "connecting circuitry," or offered a construction of the term. 376 F.3d 1352, 1360 (Fed. Cir. 2004).  Rather, the district court's claim construction order notes that "the parties are not in dispute" as to the "means to resolve" structure, which included the now-disputed "connecting circuitry." Though it had ample opportunity to do so, at no time before or during trial did Sprint Nextel object to the district court's claim construction, request clarification, or

presented them to the jury.   As Sprint Nextel makes clear in its briefs on appeal, however, the issue is whether the district court's claim constructions were erroneous. Consistent with circuit precedent, we apply the doctrine of waiver when the party failed to raise the claim construction argument until after trial. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008); *Conoco, Inc. v. Energy & Envt'l Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004); *Interactive Gift Express, Inc. v. COmpuserve Inc.*, 256 F.3d 1323, 1346-48 (Fed. Cir. 2001).

offer the construction it now advances on appeal. Indeed, Sprint Nextel's own expert testified that the district court's claim construction was "fine." *See Broadcom*, 543 F.3d at 694; *see also Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006).

## B. The '461 Patent

Sprint Nextel similarly argues that it is entitled to JMOL on infringement with respect to the '461 patent because its accused systems do not satisfy the "pre-authorized" limitation. In construing "pre-authorized," the district court largely adopted Sprint Nextel's proposed construction. Sprint Nextel had argued that the term meant "[p]ermission to submit a request has been granted in advance of determining whether the request will be authorized." The district court construed "preauthorized" to mean "authorized to submit a request in advance of determining whether the request will be granted." On appeal, Sprint Nextel argues that any pre-authorization must be with respect to a particular mobile device, not just with respect to the network. Enovsys again urges us to hold that Sprint Nextel waived this argument. In denying Sprint Nextel's motion for post-verdict JMOL, the district court found that Sprint Nextel had never previously requested the court to determine whether pre-authorization was for only one mobile device. The district court accordingly declined to address Sprint Nextel's post-verdict objection to the claim construction.

As with the '159 patent, we hold that Sprint Nextel waived its right to argue its new claim construction of "pre-authorized" by waiting until after the jury returned its verdict. *See Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1357 (Fed. Cir. 2003). Significantly, Sprint Nextel never objected to the district court's claim

construction or requested clarification as to whether "pre-authorized" pertained to the network or a particular mobile device. *Id.*

## CONCLUSION

We hold that the district court correctly denied Sprint Nextel's motion to dismiss for lack of subject matter jurisdiction. On the merits, we affirm the denial of Sprint Nextel's post-verdict JMOL motions.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

———————————————

**ENOVSYS LLC,**
*Plaintiff-Appellee,*

v.

**NEXTEL COMMUNICATIONS, INC., NEXTEL OF
CALIFORNIA, INC.,
NEXTEL COMMUNICATIONS OF THE MID-
ATLANTIC, INC.,
NEXTEL OF NEW YORK, INC., NEXTEL SOUTH
CORPORATION,
NEXTEL OF TEXAS, INC., NEXTEL WEST CORP.,
NEXTEL NEXTEL CORPORATION, NEXTEL
COMMUNICATIONS COMPANY L.P.,
NEXTEL SPECTRUM L.P., AND NEXTEL
SOLUTIONS, INC.,**
*Defendants-Appellants.*

———————————————

2009-1167

———————————————

Appeal from the United States District Court for the
Central District of California in case no. 06-CV-5306,
Judge Ronald S.W. Lew.

———————————————

NEWMAN, *Circuit Judge*, concurring in part, dissenting in
part.

I join the court's ruling with respect to standing. I write separately because the court, in reviewing the question of infringement, confounds "claim construction" with "infringement," and on this confusion, rules that the defendant waived critical aspects of its defense of non-infringement simply because those aspects were not raised in the guise of "claim construction." Thus the court holds that because the district court's claim construction was not specific to certain details of the defendant's system, the defendant "waived" its defense that these elements of its system are not within the scope of the claims. From this novel position I must, respectfully, dissent.

Amid the complexities of the procedures of "claim construction" as a prologue to determination of infringement, it is not unusual to see an intermingling or misplacement of the relationship between the claim as construed in light of the description of the invention in the specification, and the question of infringement by the accused device. Questions of infringement may sometimes be decided as claim construction, whereby the claim is construed with so tight a tie to the structure of the accused device that infringement *vel non* is immediately apparent – and summarily resolved. And questions of claim construction sometimes arise as questions of infringement, whereby the trier of fact (as distinguished from the giver of law) must decide whether the claim reads on the accused device. In either situation, any flaw is more a matter of procedural imprecision, not substantive "waiver," and any error is normally tolerable, for in either situation the decisionmaker studies the claim, understands the accused device, and decides the relationship between them as a matter of substance, not technicality.

However, as with any tolerant relationship, intolerant situations may arise. Here, for example, the defendant Nextel presented a straightforward defense to the charge of infringement, by arguing that certain aspects of the patentee's invention are not present in the accused system. Yet my colleagues on this panel hold that this defense is "waived."

For example, the court holds that Nextel is precluded from arguing that its circuitry does not infringe claim 1 of the '159 patent. Nextel argued non-infringement on the ground that its circuitry differs from the "connecting circuitry" identified in the patent as structure corresponding to the "means to resolve" limitation. My colleagues hold that this argument cannot be raised, although Nextel presented evidence at trial that its circuitry differed from the circuitry shown in the '159 patent. The court now rules that Nextel waived this non-infringement argument because Nextel did not "object to the district court's claim construction, request clarification, or offer the construction it now advances on appeal." Maj. Op. at 20–21. However, the question is not of claim construction, but of infringement of the claim as construed.

A district court ordinarily does not resolve all infringement issues through a narrowly targeted claim construction focused on the accused device. Claim construction is derived from the specification of the patent, not the accused device. Here, the district court's claim construction order stated that

> the structures disclosed in the specification that perform [the function of the "means to resolve"] are transceiver, *connecting circuitry*, CPU, satellite receiving means, terrestrial receiving means,

decoders, and temporary store. The parties are not in dispute as to these structures.

*Enovsys LLC v. Nextel Commc'ns., Inc.*, No. 06-CV-5306, slip op. at 6 (C.D. Cal. Feb. 26, 2008) (emphasis added to the term at issue for infringement). The district court, instructing the jury on infringement, explained the following regarding the "means to resolve" limitation:

> The words of the clause do not cover all means that perform the recited function of "resolving a global position from the satellites or earth-based communication means." *They cover only the structure described in the patent specification and drawings* that perform that function or an equivalent of that structure.

J.A. 2488 (emphasis added). The district court then listed the structures as it had done in its claim construction order. The claim construction and the jury instructions correctly limited the patented structures to those described in the specification. In raising its defense that its "connecting circuitry" was different from that in the specification, Nextel conformed with law and protocol. Thus Nextel presented evidence and argument at trial that its accused iDEN system did not meet the "means to resolve" limitation because it did not have the same "connecting circuitry" described in the specification. Although the jury rejected Nextel's position, it was considered, and this issue was raised on motion for JMOL. The judge denied Nextel's JMOL motion, and disagreed with Nextel's argument that the claim construction required "the exact connecting circuitry in the '159 patent." The trial judge did not treat Nextel's argument as a "waived" claim construction argument. However, my colleagues hold that the question of infringing this claim

element should have been raised as an appeal from the claim construction. Indeed, whether this question could have been raised in this manner does not mean that defense to infringement is deemed waived and cannot be presented or appealed, on the apparent theory that the defendant was required to request a claim construction in terms of its own circuitry.

Any lapse of precision between fact and law does not lead to "waiver" of the right to defend or the right to judicial review (although it may affect the standard of review). It is incorrect, and a negation of the processes of law, to hold that such a defense against infringement was waived because it was not presented, resolved, or appealed as a matter of claim construction.