# United States Court of Appeals for the Federal Circuit

2009-5017


LABATT FOOD SERVICE, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.


Johnathan M. Bailey, Bailey & Bailey, P.C., of San Antonio, Texas, argued for plaintiff-appellee.

Steven M. Mager, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director.

Rebecca E. Pearson, Venable LLP, of Washington, DC, for amicus curiae U.S. Foodservice, Inc.

Appealed from: United States Court of Federal Claims

Judge Marian Blank Horn

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-5017

LABATT FOOD SERVICE, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of Federal Claims in 08-CV-597, Judge Marian Blank Horn.

_____

DECIDED:  August 24, 2009

_____

Before NEWMAN, MAYER, and SCHALL, Circuit Judges.

MAYER, Circuit Judge.

The United States appeals the judgment of the United States Court of Federal Claims, which issued a permanent injunction vacating the government's contract award to U.S. Foodservice, Inc. ("USF") and finding in favor of Labatt Food Service, Inc. ("Labatt") due to the government's failure to adhere to the solicitation's prescribed method of transmission in the procurement process.  Labatt v. United States, 84 Fed. Cl. 50 (2008).  Because Labatt lacks standing to challenge the award, we reverse.

BACKGROUND

On January 4, 2007, the Defense Supply Center Philadelphia ("DSC"), a branch of the Defense Logistics Agency, issued Solicitation and Request for Proposals No. SPM300-06-R-0063 ("RFP") to obtain a contract for a full-line food distributor service for military facilities and other authorized customers in the Texas/Oklahoma area. This solicitation was a best value procurement. Under the RFP, initial offers were to be submitted in paper copy to the agency, and subsequent modifications or revisions of offers were to be transmitted by paper copy or facsimile. Labatt, USF, and Ben E. Keith Foods ("BEK") each submitted competitive offers in accordance with the solicitation.

On July 30, 2007, after reviewing the three initial proposals, DSC e-mailed a letter to the offerors opening negotiations and requesting additional information. Despite clear instruction in the solicitation and the July 30, 2007, agency e-mail that responses were to be transmitted by facsimile, all three offerors responded to this request for information and clarification via e-mail. Thus, substantive proposal revisions were transmitted to the agency in a manner neither anticipated nor permitted by the solicitation.

On December 4, 2007, DSC awarded the prime vendor contract to USF. Three days later, the agency debriefed Labatt, providing the overall ratings and factor ratings that resulted in its decision, as well as the relative merits, strengths and weaknesses of Labatt's proposal. Labatt filed Government Accountability Office ("GAO") protests alleging that DSC misevaluated the offers. In response, DSC elected to take corrective action by issuing amendments 0004, 0005 and 0006 to the solicitation, which clarified provisions relating to the evaluation of past performance, and re-opened the

procurement to allow revised proposals on those issues. All three offerors e-mailed their responses to these amendments within the timeframe required by DSC.

On April 28, 2008, Labatt submitted another bid protest to the GAO, this time with respect to objections it had with amendment 0006. In response, DSC issued amendment 0007 to the solicitation, which increased the guaranteed minimum and maximum purchase amounts under the contract and again re-opened the procurement to allow revised proposals. Responses to amendment 0007 were to be transmitted in duplicate via Federal Express by May 20, 2008, at 2:00 p.m. USF and BEK made timely paper-copy submissions; Labatt sent its submission by e-mail over two hours late, and transmitted a paper copy by Federal Express two days later. The contracting officer advised Labatt by letter that its proposal revision would not be considered by the agency because it was both late and transmitted by an unauthorized method of submission. In its final decision to reject the revision, the agency only mentioned the lateness ground, dropping the unauthorized method ground. Labatt filed an agency level protest of its removal from the procurement on both issues. DSC denied Labatt's protest on the lateness issue and dismissed its protest on the e-mail issue as untimely and not demonstrating prejudice. Because amendment 0007 made a material change to the solicitation, and Labatt's response to amendment 0007 was late, the contracting officer removed Labatt from the competition. On June 30, 2008, Labatt filed a protest of its removal with the GAO. The GAO denied the bid protest, and DSC awarded the contract to USF.

On August 25, 2008, Labatt filed this post-award bid protest in the Court of Federal Claims. On September 17, 2008, that court granted the bid protest, setting

aside DSC's procurement action as arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), on the basis that the procurement became fatally flawed when the agency accepted proposal revisions via e-mail in violation of the solicitation. The court found the method of transmission error to be prejudicial to Labatt on the theory that but for the unauthorized acceptance of e-mail proposal revisions, the bid process would have begun anew, in which case Labatt would have had a substantial chance of receiving the award. The United States appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

As the Court of Federal Claims recognized, to prevail the bid protester must first show that it was prejudiced by a significant error in the procurement process. JWK Int'l Corp. v. United States, 279 F.3d 985, 988 (Fed. Cir. 2002). A party has been prejudiced when it can show that but for the error, it would have had a substantial chance of securing the contract. Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1331 (Fed. Cir. 2004); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003); Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996). It is basic that "because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." Info. Tech., 316 F.3d at 1319; accord Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue. . . . [P]rejudice (or injury) is a necessary element of standing."). Whether a party has standing to sue is a question of law that we review de novo. Rex Serv. Corp. v. United States, 448 F.3d

1305, 1307 (Fed. Cir. 2006). The underlying question of prejudice requires the trial court to engage in a factual analysis, which we review for clear error. Bannum, 404 F.3d at 1354.

## I.

Labatt urges, and the trial court found, that because the three offerors improperly submitted the first round proposal revisions via e-mail, all proposals had been effectively withdrawn at that time and therefore eliminated from competition. Relying on Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001) ("Garufi"), the trial court found that Labatt had standing because all proposals were invalidated long before Labatt's late response to amendment 0007, so the government was obligated to rebid the contract and allow Labatt to compete for it. Because the court concluded that Labatt would have a substantial chance of receiving the award in a rebid, it found that Labatt had standing to sue.

The court's reliance on Garufi is misplaced. The aggrieved bidder in that case, Garufi, claimed that the government made an arbitrary and capricious responsibility determination regarding the winning bidder's record of integrity and business ethics. 238 F.3d at 1334. Garufi had standing to bring its bid protest because if its claims were true, the government's arbitrary responsibility determination resulted in a contract award to a bidder who was unfairly advantaged by the government's error. Id. In such a scenario, Garufi was denied the opportunity to fairly compete for the contract. Because "the government would [have been] obligated to rebid the contract" if the protest was successful, and the "appellant could compete for the contract once again," we found Garufi met the "substantial chance" standard and had standing. Id. Garufi thus stands

for the proposition that an unsuccessful bidder who alleges harmful error in a government bid contest in which he has an economic interest has the requisite standing to sue.

The critical difference between Garufi and the present case is not the existence of error on the part of the government, but the allegation of an error that, taken as true, would be prejudicial to the complaining party's attempt to procure the contract. It is true that a bid protester must have a substantial chance of receiving an award in order to have an economic interest in it and therefore standing to file a bid protest. Info. Tech., 316 F.3d at 1319 ("In order to establish standing, [the protester] must show that it is an actual or prospective bidder . . . whose direct economic interest would be affected by the award of the contract or by failure to award the contract . . . .") (internal quotation marks omitted); Myers, 275 F.3d at 1370 (confirming that standing to bring bid protests under the Tucker Act, 28 U.S.C. § 1491(b), is limited to actual or prospective offerors whose direct economic interest would be affected by the contract award); Rex Serv. Corp., 448 F.3d at 1307 (defining an "interested party" as an actual or prospective bidder or offeror whose direct economic interest would be affected by the contract award). But in Garufi, the protesting party also alleged a critical element of standing that is absent here: harmful error by the government in the procurement process. The trial court's application of Garufi to the case at hand relies on a logically infirm analogy between (1) an allegedly erroneous responsibility determination in Garufi that advantaged one offeror to the detriment of all others, and (2) an improper deviation from the solicitation in this case that equally permitted all offerors to submit proposal revisions via e-mail, harming none.

In both cases unsuccessful offerors alleged error on the part of the government. Here, however, there is no showing of how the government's error caused Labatt to suffer disparate treatment or particularized harm. Instead, Labatt tautologically argues that it was harmed by the method of transmission error because it would have a substantial chance of receiving the contract award in a rebid. By conflating the standing requirements of prejudicial error and economic interest, Labatt would create a rule that, to an unsuccessful but economically interested offeror in a bid protest, any error is harmful. Under this radical formulation there would be no such thing as an error non-prejudicial to an economically interested offeror in a bid contest. We decline to adopt such a rule. Instead, we reiterate the established law in this circuit that non-prejudicial errors in a bid process do not automatically invalidate a procurement. Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996); Grumman Data Sys. Corp. v. Widnall, 15 F.3d 1044, 1048 (Fed. Cir. 1994) (holding, inter alia, that de minimis errors by the procuring agency are not sufficient grounds for overturning a contract award); Andersen Consulting Co. v. United States, 959 F.2d 929, 932 (Fed. Cir. 1992) (same).

## II.

In the same vein, Labatt equates the two irregularities that occurred in this bid process, (1) its late proposal submission, and (2) all three offerors' submission of proposal revisions by e-mail. Labatt rushes past standing to the merits of its case, contending that because Federal Acquisition Regulation 15.208(a) makes offerors responsible for submitting proposals on time and by an authorized transmission method, the issues of timeliness and transmission method are necessarily and always of equal importance. Indeed, Labatt's primary argument is that it was arbitrary and capricious for

the government to enforce proposal submission deadlines but not the solicitation's instructions for method of transmission. Essentially, its position is that if the government makes any mistake in a procurement process related to method of transmission, no matter how slight or unharmful, then it must nullify the contest and begin anew.

Labatt's position is unavailing. As we said above, "to prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it." Data Gen. Corp., 78 F.3d at 1562; JWK Int'l Corp., 279 F.3d at 988. To establish prejudice a protester must show that there was a substantial chance it would have received the contract but for the government's error in the bid process. Bannum, 404 F.3d at 1358; Galen Med. Assocs., 369 F.3d at 1331; Info. Tech., 316 F.3d at 1319; Statistica, 102 F.3d at 1581. Labatt has not shown that the government's improper acceptance of e-mails throughout the bid process interfered with its ability to receive the contract award. To the contrary, the government's mistaken acceptance of bid revisions via e-mail neither helped nor hindered any offeror. Labatt's proposal would not have been improved and its chances of securing the contract would not have been increased if DSC cured the e-mail submission error. Thus, it can not show that there was a substantial chance it would have received the contract award but for the unauthorized acceptance of e-mailed revisions and has therefore failed to show that it was prejudiced by DSC's erroneous acceptance of them. There is no connection between the government's method of transmission error and Labatt's failure to secure the contract. Without a showing of harm specific to the asserted error, there is no injury to redress, and no standing to sue.

Lateness, on the other hand, is a different issue. Labatt was disqualified from further consideration in the solicitation process because its response to amendment 0007 was late, not because it was sent by e-mail rather than overnight mail. Labatt was the only offeror to submit a late response, and its untimely submission constituted a separate and independently sufficient ground for rejection.

All errors are not equal. There are inherent competitive advantages to submitting a proposal after all other parties are required to do so, such as access to post-deadline news and market information that could result in last minute changes to the proposal. See, e.g., Data Gen. Corp., 78 F.3d at 1561 ("The rule [that an offeror may not modify its proposal after best and final offers are submitted] is designed to prevent a bidder from gaining an unfair advantage over its competitors by making its bid more favorable to the government in a context where the other bidders have no opportunity to do so."). To avoid this potential for abuse, submission deadlines are strictly enforced across the board. When the rules and procedures of a bid process are applied equally to all parties, but one party submits a proposal past the deadline for doing so, the untimely submission becomes a stranger to the process, and is disqualified from the procurement. A late proposal is tantamount to no proposal at all. Such a party has no "substantial chance" of award, and no more standing to sue than the proverbial man on the street.

The method of transmission error complained of by Labatt was not relevant to Labatt's removal from the competition, or the ultimate award of the contract to USF. It was removed from the competition for an untimely submission. Because the asserted error caused no harm, there is no injury to redress and Labatt is entitled to no relief. As

such, Labatt failed to establish standing to challenge DSC's award to USF, and the Court of Federal Claims had no jurisdiction to vacate the award.

CONCLUSION

Accordingly, the judgment of the United States Court of Federal Claims is reversed.

<u>REVERSED</u>