# United States Court of Appeals for the Federal Circuit

---

**VAS REALTY, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, CAPE MORAINE, LLC,**
*Defendants-Appellees*

---

2021-1962

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01417-LKG, Judge Lydia Kay Griggsby.

---

Decided:  February 18, 2022

---

ANUJ VOHRA, Crowell & Moring LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by ALEXANDRA BARBEE-GARRETT, CHRISTIAN CURRAN, MONICA ROSE STERLING.

STEPHEN CARL TOSINI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., DOUGLAS K. MICKLE; NANCY ELLEN OCONNELL, United States General Services Administration, Boston, MA.

STEVEN D. GORDON, Holland & Knight, LLP, Washington, DC, argued for defendant-appellee Cape Moraine, LLC. Also represented by HILLARY FREUND, GORDON GRIFFIN, ROBERT MACKICHAN, JR.

_____

Before NEWMAN, DYK, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

VAS Realty, LLC appeals a decision by the U.S. Court of Federal Claims dismissing VAS's bid protest for lack of standing on the ground that VAS failed to show it has a substantial chance of winning the lease at issue. If VAS's protest proves successful, VAS would have an opportunity to participate in any new procurement. We have previously held that under such circumstances, a protester has a substantial chance of winning the award for standing purposes. This precedent applies in this case. We therefore hold that the Court of Federal Claims erred when it dismissed VAS's protest for lack of standing. We reverse the Court of Federal Claims' decision dismissing VAS's protest for lack of standing and remand for further proceedings.

BACKGROUND

Prior to 2017, VAS Realty, LLC ("VAS") leased a facility to the government that housed the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") in Warwick, Rhode Island. On September 18, 2017, the General Services Administration ("GSA") issued a request for lease proposals ("RLP") for a facility to house ICE in Rhode Island. J.A. 10049. The lease term was initially 10 years, 7 years firm. *Id.* The RLP required a

building with 20,579 ABOA[1] square feet of usable office space. *Id.* The RLP also required 130 onsite parking spaces. *Id.* According to the RLP, GSA would award a contract to the lowest-priced, technically acceptable offer. J.A. 10061.

On October 11, 2017, the due date for initial proposals, three entities submitted proposals: VAS, Raith Capital Investors, LLC ("Raith"), and a third offeror that later withdrew its proposal. J.A. 10565. VAS offered the same building that ICE was already occupying. In Section II of the RLP response form, VAS indicated that the building consisted of 26,087 ABOA square feet, 30,000 rentable square feet, and 130 parking spots. J.A. 10157. The building therefore had 5,508 ABOA square feet beyond what the RLP required.

On October 31, 2017, GSA sent VAS a deficiency letter. GSA indicated that the information VAS had provided in Section II with respect to ABOA square feet and rentable square feet (Boxes 9 and 10, respectively) was "incomplete [and] incorrect." J.A. 10201. GSA asked VAS to revise its proposal by "[p]lac[ing] the maximum amount noted in RLP Para 1.02 (20,579 ABOA)" in Box 9, and to "correct the offered [rentable square feet] amount" in Box 10. *Id.* VAS submitted a revised proposal on November 7, 2017, that changed the office area's ABOA square feet (Box 9) to 20,579 and reduced the rentable square feet figure (Box 10). J.A. 10203–04, 10214. VAS explained that the extra space of 5,508 square feet would be rendered unmarketable so it was "still willing to allow Government use of the unmarketable space as it deems acceptable." J.A. 10205.

---

[1] "ABOA" refers to American National Standards Institute/Building Owners and Managers Association ("ANSI/BOMA") Office Area.

On November 21, 2017, GSA asked VAS and Raith to submit final proposal revisions by December 1, 2017. J.A. 10565. However, on the due date, GSA notified both offerors that it was canceling the request for final proposal revisions, pausing negotiations, and revising the RLP requirements. *Id.* Ten days later, the GSA Contracting Officer, Mark Shinto, toured VAS's offered property. J.A. 50. Mr. Shinto allegedly suggested to VAS that it could include the 5,508 ABOA square feet of unmarketable office space in its proposal. *Id.*; J.A. 10275.

GSA issued an amendment to the RLP on February 18, 2018, that modified the lease term to 15 years, 10 years firm. J.A. 10028, 10565. GSA reopened the competition and requested new final proposals due March 9, 2018. J.A. 10273, 10565. VAS submitted its final proposal on the due date.[2] J.A. 10275. VAS explained that "[a]t the suggestion of the Contracting Officer made during a meeting held on 11 December 2017[,] we have added the cost (shell rate) for 5,508 ABOA square feet of unmarketable space to the proposed rental rate and a 5[-]year option." *Id.* Later that month, Mr. Shinto informed Cape Moraine, LLC that VAS was the only bidder in the procurement and invited Cape Moraine to submit a proposal even though the March 9, 2018 proposal submission deadline had passed. J.A. 12132. Cape Moraine accepted Mr. Shinto's invitation and submitted a proposal on April 20, 2018.

On July 9, 2018, GSA again amended the RLP to reduce the number of parking spots required and requested new final proposals. J.A. 10030. That same date, Mr. Shinto sent a deficiency letter to VAS. J.A. 10362–63. The letter stated that VAS's current offer was outside of the competitive negotiation range and asked VAS to revise its offer to a more competitive one. J.A. 10362. The letter did

---

[2]    On this same date, Raith notified GSA that it was withdrawing its bid. J.A. 10565–66.

not, however, specifically mention the 5,508 ABOA square feet as a problem that needed correction.  *See id.*

VAS submitted a revised proposal on July 17, 2018, which continued to include the unmarketable space of 5,508 ABOA square feet.  J.A. 10367.  The cover letter to VAS's revised proposal stated that "annual fees for the sally port, outside storage, and the ABOA rate for any space that is deemed unmarketable have been noted" and that "these fees and unmarketable rate have not been incorporated into the shell rate in Section II, Boxes 16d and 16e."  J.A. 10364.  Boxes 16d and 16e, respectively, corresponded to annual rent per rentable square foot and to annual rent per ABOA square foot.  J.A. 10214.

On August 16, 2018, GSA issued a memorandum awarding the contract to Cape Moraine based on its determination that Cape Moraine had submitted the lowest-priced, technically acceptable offer.  J.A. 10510–12.  GSA further explained that the VAS proposal's "Present Value Rate" of $44.40 per ABOA square foot was outside the competition range.  J.A. 10507.  In October 2018, Cape Moraine and GSA signed a lease to house ICE at Cape Moraine's offered property.  Shortly thereafter, GSA notified VAS that its proposal had been unsuccessful, and that GSA had awarded the contract to Cape Moraine.  J.A. 10514.

VAS then submitted a request for post-award debriefing.  J.A. 10516.  By November 26, 2018, GSA had not provided VAS with a debriefing, and so VAS filed a *pro se* protest with the U.S. Government Accountability Office ("GAO").  A month later, GAO dismissed VAS's protest without reaching the merits.

Over a year later, on March 19, 2020, the GSA Office of the Inspector General ("OIG") issued a report on the procurement.  J.A. 10564.  The report stated that it had received, via its hotline, a complaint about the procurement. *Id.*  The report stated that the OIG had found that the procurement was "significantly flawed, resulting in an

improper lease award." *Id.* Specifically, the OIG stated that GSA accepted a late proposal from Cape Moraine; used a calculation of the lease's present value that favored Cape Moraine; awarded the contract to Cape Moraine even though Cape Moraine did not own or control the property at the time of its proposal; failed to timely and adequately debrief VAS; and used misleading and unclear acquisition terminology. J.A. 10564–73. The OIG explained that, "[t]aken together, these deficiencies compromised the integrity of the lease procurement" and that GSA "should determine whether the lease award should be reevaluated." J.A. 10564.

The following month, in April 2020, VAS received a copy of the OIG report. VAS then asked GSA whether it intended to take any corrective action based on the report. By September 2020, VAS had allegedly learned that GSA did not intend to take any corrective action and that Cape Moraine had not yet begun construction or build out work.

On October 19, 2020, VAS filed a complaint in the U.S. Court of Federal Claims challenging GSA's award to Cape Moraine based on the infirmities outlined in the OIG report. J.A. 24. Indeed, according to VAS, the OIG report was the "real animating factor" for filing the complaint. Oral Arg. at 10:51–11:01. In its complaint, VAS requested relief in the forms of a declaration that the contract award was void, an injunction of performance under the contract, and an injunction directing the government to award the contract to VAS or, in the alternative, cancel and reissue solicitation. *See* J.A. 49. Shortly thereafter, VAS moved for judgment on the administrative record. In response, the government and Cape Moraine cross-moved for judgment on the administrative record and moved to dismiss for lack of standing. *See* J.A. 166–334.

On April 29, 2021, the Court of Federal Claims granted the motions to dismiss for lack of standing and denied the parties' cross-motions for judgment on the administrative

record as moot. *VAS Realty, LLC v. United States*, No. 20-1417C, 2021 WL 1853382, at *1 (Fed. Cl. Apr. 29, 2021). The court reasoned that VAS lacked standing because it was ineligible for the award of the ICE lease. *Id.* at *7. The court explained that "the maximum rentable square footage specified in the RLP constitutes a material term of a leasehold procurement, because maximum rentable square footage is essential to determining the price of the lease and addresses the quantity of space that the government is procuring." *Id.* (citation omitted). And because VAS proposed a square footage greater than the specified maximum, VAS's proposal did not comply with a material term, rendering VAS ineligible for the award. *Id.* at *8. For that reason, VAS did not have a "direct economic interest" in the outcome of the procurement and thus lacked standing. *Id.*

The court rejected VAS's arguments that it had standing. Specifically, it was not persuaded by the fact that GSA had found VAS's proposal technically acceptable. The court explained that GSA's determination, by itself, did not answer the question of whether VAS had standing. *Id.* The court also rejected VAS's argument that it had standing on the ground that the RLP itself contained procedures for deviating from the RLP's stated requirements. The court reasoned that "these provisions do not *require* that GSA accept such deviations," and no evidence established that GSA had accepted VAS's deviation or that VAS complied with the RLP's procedures for deviating. *Id.* Lastly, the court rejected VAS's argument that GSA's contracting officer directed VAS to include the excess square footage in its proposal. *Id.* at *9. The court reiterated that this alleged "suggestion" by the contracting officer did not absolve VAS of its responsibility to comply with the RLP's procedures for deviating from the RLP's stated requirements. *Id.*

VAS appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

STANDARD OF REVIEW

"Whether a party has standing to sue is a question of law that we review de novo." *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1379 (Fed. Cir. 2009). "The underlying question of prejudice requires the trial court to engage in a factual analysis, which we review for clear error." *Id.*

DISCUSSION

VAS argues that the Court of Federal Claims erred by overlooking binding precedent that establishes VAS's standing to file a bid protest. Appellant's Br. 23–27. In particular, according to VAS, two of this court's decisions—*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001), and *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353 (Fed. Cir. 2015)—hold that a bid protester has standing when, assuming its protest is successful, it would have an opportunity to participate in a new procurement. *Id.* VAS also contends that the Court of Federal Claims erred by failing to consider Cape Moraine's own ineligibility for the award and the resulting need for GSA to rebid the contract. *Id.* at 20–23. We agree.

In *Garufi*, we explained that

[i]n this case, as the government has conceded at oral argument, if appellant's bid protest were allowed because of an arbitrary and capricious responsibility determination by the contracting officer, the government would be obligated to rebid the contract, and appellant could compete for the contract once again. Under these circumstances, the appellant has a "substantial chance" of receiving the award and an economic interest and has standing to challenge the award.

238 F.3d at 1334 (citation omitted).

Similarly, in *Tinton Falls*, we explained that the bid protester, Tinton Falls, had standing even though it was not clear "whether Tinton Falls could compete for this hypothetical reopened bid" because it was not a small business concern as required by the solicitation. 800 F.3d at 1359. Nevertheless, the parties "appear[ed] to agree that [the government] would be obligated to *evaluate* whether it could still solicit the contract as a small business set-aside, or whether it would need to reopen the bidding process on an unrestricted basis." *Id.* (emphasis added). We explained, "[A]lthough there is much speculation as to whether [the government] would rebid the solicitation on an unrestricted basis—thus allowing Tinton Falls to compete for the contract—none of the parties disputes the Claims Court's finding that this is at least a realistic possibility." *Id.* at 1359–60. This "realistic possibility" of rebidding the competition on an unrestricted basis thus formed the basis for Tinton Falls' qualification as an interested party under 28 U.S.C. § 1491(b)(1) for standing purposes.

We conclude that VAS meets the interested party standard set forth in *Garufi* and *Tinton Falls*. "In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." *Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). VAS alleged in its complaint that GSA's award of the contract was unlawful for reasons identified in the OIG's report. *See* J.A. 40–44. For example, VAS alleged that GSA violated the RLP and federal regulations including 48 C.F.R. § 552.270-1 by accepting Cape Moraine's proposal a month after GSA's deadline for revised proposals and long after the deadline for initial proposals. J.A. 40–41. VAS also alleged that Cape Moraine's proposal violated the RLP's requirement to demonstrate that the offered property's owner authorized Cape Moraine to submit the bid. J.A. 43–44. Neither Cape Moraine nor the government disputes these violations of federal

regulation and the RLP.  Nor do the parties dispute that, if VAS were to succeed on these challenges, then VAS would remain the sole bidder for lease.  And to the extent VAS's proposal is not technically acceptable, the government would then have to rebid the lease and thus afford VAS another opportunity to bid.  Nothing prevented VAS from submitting a qualifying bid in response to the new solicitation that excluded the additional square footage.  Under these circumstances, VAS has a substantial chance of winning the lease for purposes of standing.  *See Garufi*, 238 F.3d at 1334; *Tinton Falls*, 800 F.3d at 1359.

## CONCLUSION

We hold that the Court of Federal Claims erred in dismissing the case for lack of standing on the ground that VAS failed to show it has a substantial chance of winning the award.  If VAS's protest proves successful, then, to the extent VAS's own proposal was not technically acceptable, GSA would be resigned to rebidding the lease and thus providing VAS a new opportunity to bid.  Under *Garufi* and *Tinton Falls*, VAS satisfies the substantial chance requirement.  We have considered the parties' remaining arguments and find them unpersuasive.[3]  We therefore reverse the Court of Federal Claims' decision dismissing the case and remand for further proceedings.

## REVERSED AND REMANDED

---

[3]    The government argues for affirmance on an alternative ground that injunctive relief is not available because of laches—"VAS waited for two years to file its protest complaint."  Appellee's Br. 24.  But at oral argument, the government conceded that it had failed to show prejudice from the delay.  *See* Oral Arg. at 24:35–24:57.  The defense of laches requires a showing of prejudice, *see Costello v. United States*, 365 U.S. 265, 282 (1961), and therefore the laches defense is not available.

VAS REALTY, LLC v. US                                                                11

COSTS

No costs.