# United States Court of Appeals for the Federal Circuit

---

**SEKRI, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1936

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-00778-RAH, Judge Richard A. Hertling.

---

Decided: May 13, 2022

---

ALAN GRAYSON, Orlando, FL, argued for plaintiff-appellant.

RAFIQUE OMAR ANDERSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, MARTIN F. HOCKEY, JR.

---

Before NEWMAN, REYNA, and CUNNINGHAM, *Circuit Judges.*

REYNA, *Circuit Judge*.

SEKRI, Inc. appeals a decision of the U.S. Court of Federal Claims dismissing its bid protest action. The Court of Federal Claims determined that SEKRI lacks standing because it does not qualify as an actual or prospective bidder and that SEKRI failed to state a claim because it waived its right to bring a bid protest action under *Blue & Gold*. We hold that, in view of the Javits-Wagner-O'Day Act and its implementing regulations, SEKRI qualifies as a prospective bidder for standing purposes and that SEKRI has not waived its right to bring its bid protest action under the *Blue & Gold* waiver standard. Accordingly, we reverse the Court of Federal Claims' dismissal and remand for further proceedings consistent with this opinion.

BACKGROUND

I

A

The Javits-Wagner-O'Day Act ("JWOD Act") was originally enacted in 1938 to prioritize purchasing of products from suppliers that employed blind individuals. U.S. Statutes at Large, 75 Cong. Ch. 697, 52 Stat. 1196 (June 25, 1938) (JWOD Act). The JWOD Act established the "Committee on Purchases of Blind-made Products" and charged it with various duties, including determining fair market prices of "brooms and mops and other suitable commodities manufactured by the blind and offered for sale to the [f]ederal [g]overnment by any non-profit-making agency for the blind." *Id.* § 2. The Act stated, "All brooms and mops and other suitable commodities hereafter procured in accordance with applicable [f]ederal specifications by or for any [f]ederal department or agency *shall be procured* from such non-profit-making agencies for the blind in all cases where such articles are available within the period specified at the price determined by the committee . . . ." *Id.* § 3.

The legislative history of the 1938 JWOD Act shows that Congress intended to create a procurement system in which the government would be required to purchase certain products from suppliers that employ blind individuals. Under the new system, the government would "distribute . . . orders among . . . agencies for the blind. In other words, instead of the present cutthroat competition[,] the blind people who are engaged in this type of work will be able to obtain it at a fair price." 83 Cong. Rec. 9111 (1938). The bill would take the buying of mops, brooms, and other suitable commodities "*out of competitive bidding*." *Id.* (emphasis added); *see also* S. Rep. 75-1330, at 2 (1938).

Congress expanded the JWOD Act in 1971 to similarly protect suppliers that employ "other severely handicapped" individuals. Pub. L. No. 92-28, 85 Stat. 77, 80 (1971); *see also* S. Rep. No. 92-41, at 1 (1971) (stating Congress's principal objectives). Congress again amended the law in 2011 by, among other things, renaming the Committee to be called the "Committee for Purchase From People Who Are Blind or Severely Disabled." Pub. L. No. 111-350, 124 Stat. 3677, 3826 (2011).

The JWOD Act today, 41 U.S.C. §§ 8501–06, establishes a procurement system, overseen by the Committee, in which the government procures certain commodities and services from nonprofit agencies that employ the blind or otherwise severely disabled. The Committee has the responsibilities of, among other things, (i) maintaining and publishing a "procurement list" identifying products and services made or rendered by qualified nonprofit agencies for the blind or severely disabled, (ii) designating one or more "central nonprofit agencies" to facilitate the distribution of orders for the products and services on the procurement list, and (iii) prescribing regulations implementing

the law. *See* 41 U.S.C. § 8503. Under the JWOD Act procurement system, if a federal agency

> intend[s] to procure a product or service on the procurement list . . .[,] [it] *shall procure* the product or service from a qualified nonprofit agency for the blind or a qualified nonprofit agency for other severely disabled in accordance with regulations of the Committee and at the price the Committee establishes if the product or service is available within the period required by the entity.

*Id.* § 8504(a) (emphasis added).

B

The Committee has promulgated regulations that define the complex "AbilityOne Program," which is the Committee's name for the JWOD Act procurement system. 41 C.F.R. pt. 51. These regulations reiterate the mandatory nature of the AbilityOne Program. *See* 41 C.F.R. § 51–1.2(a) (stating that the JWOD Act "mandates that commodities or services on the [p]rocurement [l]ist required by [g]overnment entities be procured" from a qualified nonprofit agency).

The Committee's regulations describe the role of the "central nonprofit agencies" in the AbilityOne Program. The regulations designate SourceAmerica (formerly known as NISH) as the central nonprofit agency that works, in a number of respects, with nonprofit agencies that employ people with severe disabilities other than blindness. *Id.* §§ 51–3.1 to –3.2. SourceAmerica is responsible for representing those nonprofit agencies when dealing with the Committee; evaluating the qualifications and capabilities of nonprofit agencies; recommending commodities and services for inclusion on the procurement list; distributing

orders from government contracting activities;[1] and recommending price changes. *Id.* § 51–3.2.

The regulations also impose requirements on participating nonprofit agencies to, for example, initially qualify for participation in the AbilityOne Program and thereafter maintain their qualification. *See id.* pt. 51–4.

The Committee's regulations also set out "contracting requirements," *see id.* pt. 51–5, including a mandatory source requirement: "Nonprofit agencies designated by the Committee are *mandatory sources* of supply for all entities of the Government for commodities and services included on the [p]rocurement [l]ist . . . ." *Id.* § 51–5.2(a) (emphasis added). Accordingly, "[p]urchases of commodities on the [p]rocurement [l]ist by entities of the Government *shall be made* from sources authorized by the Committee," which "may include nonprofit agencies, [SourceAmerica], Government central supply agencies such as the Defense Logistics Agency and the General Services Administration, and certain commercial distributors." *Id.* § 51–5.2(b) (emphasis added). "Contracting activities *shall require* other persons providing commodities which are on the [p]rocurement [l]ist to entities of the [g]overnment by contract to order these commodities from the sources authorized by the Committee." *Id.* § 51–5.2(c) (emphasis added).

The Committee's regulations provide for "purchase exceptions" permitting a contracting activity to procure commodities on the procurement list from commercial sources under certain circumstances. *See id.* § 51–5.4(a). For example, SourceAmerica or the Committee may grant such

---

[1] The Committee's regulations specify that SourceAmerica "shall distribute orders from the [g]overnment only to nonprofit agencies which the Committee has approved to furnish the specific commodity or service." 41 C.F.R. § 51–3.4.

exceptions when (i) qualified nonprofit agencies are unable to furnish a commodity within the specified period and (ii) a commercial source is able to provide the commodity in sufficient quantities "significantly sooner" than the qualified nonprofit.  *Id.* § 51–5.4.

The Committee's regulations also establish procurement procedures under the AbilityOne Program.[2]   One type of procedure is the "direct order process": "Once a commodity or service is added to the Procurement List, [SourceAmerica] may authorize the contracting activity to issue orders directly to a nonprofit agency without requesting an allocation for each order."  *Id.* § 51–6.1(a).  Alternatively, the regulations define an "allocation[3] process": "*In those cases where a direct order authorization has not been issued . . .* , the contracting activity *shall submit written requests for allocation* to [SourceAmerica]."  *Id.* § 51–6.2(a) (emphasis added).  "Upon receipt of an allocation, the contracting activity *shall promptly submit an order* to [SourceAmerica] or [the] designated nonprofit agency(ies)."  *Id.* § 51–6.2(h) (emphasis added).  There is no requirement

---

[2]    The Committee's regulations also establish a variety of other procedures in the AbilityOne Program.  Such procedures apply to, among other things, adjustment or cancellation of orders where a nonprofit agency fails to comply with the terms of an order, *id.* § 51–6.5; orders in excess of the nonprofit agency's capability, *id.* § 51–6.7; deletion of items from the procurement list, *id.* § 51–6.8; correspondence and inquiries concerning deliveries of commodities, *id.* § 51–6.9; quality complaints, *id.* § 51–6.11; specification changes, *id.* § 51–6.12; and disputes between a nonprofit agency and a contracting activity, *id.* § 51–6.15.

[3]    "An allocation is not an obligation to supply a commodity or service, or an obligation for the contracting activity to issue an order."  *Id.* § 51–6.2(g).

that a duly established AbilityOne Program agency must submit a typical competitive bid for a procurement from a mandatory source to occur.

C

The Federal Acquisition Regulation ("FAR") includes a separate set of regulations implementing the AbilityOne Program. 48 C.F.R. subpart 8.7. The FAR provisions overlap substantively with the Committee's regulations. For example, the FAR provides that, in general, "[o]rdering offices *shall obtain* supplies and services on the Procurement List from the central nonprofit agency or its designated AbilityOne participating nonprofit agencies . . . ." *Id.* § 8.705–1 (emphasis added). If supplies are identified on the procurement list as available from the Defense Logistics Agency ("DLA") or the General Services Administration ("GSA") supply distribution facilities, then the supplies *must* be obtained through those facilities, and in turn DLA and GSA "*shall obtain* the supplies . . . from [SourceAmerica] or its designated AbilityOne participating nonprofit agency." *See id.* § 8.705–1 (emphasis added). The FAR also describes both a direct order process, *id.* § 8.705–2, and an allocation process, *id.* § 8.705–3. The FAR also states that ordering offices may acquire supplies on the procurement list from commercial sources "only if the acquisition is specifically authorized in a purchase exception granted by the designated central nonprofit agency." *Id.* § 8.706(a). Such purchase exceptions are appropriate under the FAR when the nonprofit agency cannot provide the commodities in sufficient quantities or cannot meet the required deadline. *Id.* § 8.706(b). Under the FAR, the Committee may also grant a purchase exception in appropriate cases. *Id.* § 8.706(e).

## II

In July 2019, the DLA[4] issued Solicitation No. SPE1C1-19-R-0021, which contemplated awards for two separate lots:  Lot 1 acquiring a Rifleman Set with Tactical Assault Panel ("TAP") and Lot 2 acquiring the same with Associated Components. *SEKRI, Inc. v. United States*, 152 Fed. Cl. 742, 745–46 (2021).  On March 30, 2020, DLA awarded a contract for Lot 1 to Propper International, Inc. *Id.* at 746; Appx 40–41.

On April 21, 2020, DLA issued a public notice of an amendment ("Amendment 6") that changed Lot 2 from acquiring TAP to acquiring an "*Advanced* Tactical Assault Panel (ATAP)[5] and its associated components."  Appx 40–41 (emphasis added); *see also SEKRI*, 152 Fed. Cl. at 746.  The notice stated, "This acquisition for Lot #2 will result in the award of a single, firm fixed-price, long-term Indefinite Delivery, Indefinite Quantity (IDIQ) contract consisting of a one (1) year base term and two (2), one (1) year option terms."  Appx 41.  The notice further specified that "[t]he solicitation's evaluation factors, which are listed in descending order of importance, will include Product Demonstration Models, Past Performance – Performance Confidence Assessment and Socioeconomic Program Support."  Appx 41.  In addition, offered prices "will be evaluated . . . to ensure that award will be made at fair and

---

[4]    DLA is an agency within the U.S. Department of Defense.  As such, it is subject to both the JWOD Act and the FAR.

[5]    ATAP "is a fighting load carrier to be worn with a parachute harness" that "can be configured . . . to attach 6 or more M4 magazines, two grenades, an Individual First Aid Kit (IFAK) and canteen/general purpose pouches."  Appx 38.  ATAP "enables the paratrooper's fighting load to in a ready to fight configuration when reaching the drop zone."  Appx 38.

reasonable prices." Appx 41. The notice also explained that "[t]he planned acquisition will be issued on an Unrestricted Basis" and that "[t]he Government intend[ed] to make a single award to the responsible offeror whose proposal [met] all terms and conditions of the solicitation, [was] determined to be the best value to the Government and submit[ted] an overall price that is determined to be fair and reasonable by the contracting officer." Appx 42. A subsequent amendment set an October 7, 2020, proposal deadline. *SEKRI*, 152 Fed. Cl. at 746.

SEKRI, Inc.,[6] a nonprofit agency qualified as a mandatory source of ATAP under the AbilityOne Program, *SEKRI*, 152 Fed. Cl. at 745–46, became aware of Amendment 6 shortly after it issued, Appx 1087. Between June 10, 2020, and June 25, 2020, SourceAmerica exchanged emails with DLA regarding DLA's procurement of ATAP via a competitive bidding process. *SEKRI*, 152 Fed. Cl. at 746; Appx 1088. SourceAmerica informed DLA that ATAP appears on the Committee's procurement list under the AbilityOne Program and that SEKRI is the nonprofit agency authorized to supply ATAP. Appx 1091. SourceAmerica asked DLA if it intended to acquire the ATAP specified in the solicitation from SEKRI. Appx 1091. DLA's contracting officer responded that, "[t]o best meet the Army's requirements, DLA is purchasing the [ATAP] in the full & open unrestricted SPE1C1-19-R-0021" and that SourceAmerica "is invited to offer as a sub-contractor or as a prime contractor under this solicitation." Appx 1090.

On October 7, 2020, the solicitation period ended. On January 21, 2021, before an award was made, SEKRI filed a complaint in the U.S. Court of Federal Claims challenging, as contrary to law, DLA's procurement of ATAP

---

[6] SEKRI, Inc. is also known as Southeastern Kentucky Rehabilitation Industries, Inc. Appx 26.

through a competitive solicitation rather than through SEKRI. Appx 26–45. SEKRI alleged that it is a "qualified nonprofit agency for other severely disabled workers" under the JWOD Act. Appx 28. It also alleged, for standing purposes, that it qualifies as an "interested party" under 28 U.S.C. § 1491 "because it currently produces the ATAP, and because it is the mandatory source of supply for the ATAP." Appx 27. According to the complaint, ATAP appears on the Committee's procurements list established under the JWOD Act, and the Committee designated SEKRI as the "Mandatory Source of Supply" for ATAP. Appx 37–38. SEKRI sought an injunction of the procurement prohibiting the federal government from procuring the ATAP from any source other than SEKRI, as well as attorney fees under the Equal Access to Justice Act. Appx 42–45.

On February 5, 2021, the government moved to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim under the waiver rule established in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007). *SEKRI*, 152 Fed. Cl. at 746; Appx 22. The government did not challenge SEKRI's standing in its motion to dismiss. *SEKRI*, 152 Fed. Cl. at 746.

On March 9, 2021, the Court of Federal Claims granted the government's motion. *Id.* at 745. The court *sua sponte* raised the issue of SEKRI's standing. *Id.* at 747. The court explained that, to establish standing as an "interested party" under 28 U.S.C. § 1491(b)(1), a plaintiff must show that "it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Id.* at 748 (quoting *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).

The court determined that SEKRI does not qualify as an actual or prospective bidder. *Id.* In determining that SEKRI does not constitute a prospective bidder, the court

reasoned that SEKRI "cannot now claim to be a prospective bidder on the DLA's solicitation because the solicitation period ended on October 7, 2020." *Id.* The court also explained that "a plaintiff qualifies as a prospective bidder if it diligently pursued its protest rights, such as bringing a bid protest prior to the close of bidding." *Id.* (citing *CGI Fed. Inc. v. United States*, 779 F.3d 1346, 1349–50 (Fed. Cir. 2015)). The court found that SEKRI did not diligently pursue its protest rights because the only action SEKRI took before filing its complaint was contacting DLA, through SourceAmerica, to inform DLA that SEKRI was a mandatory source of the ATAP specified in the solicitation. *Id.* at 749. The court observed that SEKRI did not submit a bid before the deadline despite DLA's invitation. *Id.*

The court also determined that "[e]ven if the plaintiff had standing, the Court finds that the plaintiff's complaint must be dismissed under *Blue & Gold*." *Id.* at 751. The court reasoned that SEKRI had the opportunity to object to Amendment 6 to the solicitation as containing a patent error, namely the omission of ATAP's mandatory source of supply, but SEKRI did not do so. *Id.* at 755. Further, the court explained, SEKRI failed to object to the solicitation before the close of the bidding process. *Id.* at 757. The court stated that "[t]o avoid waiver, a party must object before the close of the bidding process." *Id.*

SEKRI appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

We review determinations of standing de novo. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1379 (Fed. Cir. 2009); *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1381 (Fed. Cir. 2012). Any underlying fact findings are reviewed for clear error. *Labatt*, 577 F.3d at 1379.

Whether a complaint was properly dismissed for failure to state a claim upon which relief could be granted is a

question of law that we review without deference. *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 591 (Fed. Cir. 2021). To state a claim, a complaint must allege facts plausibly showing entitlement to relief. *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

DISCUSSION

I

A

The Tucker Act, 28 U.S.C. § 1491, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), "confers exclusive jurisdiction upon the Court of Federal Claims over bid protests against the government." *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Section 1491(b)(1) reads:

> [T]he United States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an *interested party* objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement,

28 U.S.C. § 1491(b)(1) (emphasis added). This court has interpreted the phrase "interested party" in § 1491(b)(1) as consistent with the express definition given to that phrase in a related statute, the Competition in Contracting Act, 31 U.S.C. §§ 3551–56: "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the

contract."[7] *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 Fed. Cir. (2001); *see also* 31 U.S.C. § 3551(2)(A). We are not aware of any case where this court has specified the circumstances under which a qualified mandatory source of a commodity in the AbilityOne Program qualifies as a "prospective bidder or offeror" for purposes of standing to file a bid protest in the Court of Federal Claims.[8] This case therefore presents an issue of first impression.

B

SEKRI argues that it has standing under the Tucker Act as an actual or prospective bidder with a direct economic interest in DLA's solicitation on the grounds that it is a qualified, mandatory source of ATAP in the AbilityOne Program. Appellant's Br. 10. According to SEKRI, "[t]he only reason that there is any 'actual bidder,' apart from SEKRI," is that DLA violated its express obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI via the AbilityOne Program. *Id.*

We agree with SEKRI. We hold that SEKRI qualifies as a prospective bidder for standing purposes under the

---

[7]  In contrast, federal district courts have jurisdiction to review bid protests under the Administrative Procedure Act. *See, e.g.*, *Garufi*, 238 F.3d at 1331.

[8]  In cases not involving mandatory sources under the JWOD Act, this court has explained, for example, that "the opportunity to qualify either as an actual or a prospective bidder ends when the proposal period ends," *Rex Service Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006), and that a protester can qualify as a prospective bidder by "diligently and continuously pursuing its rights in the [agency] and then, immediately upon dismissal by the [agency], in the Court of Federal Claims," *CGI Federal Inc. v. United States*, 779 F.3d 1346, 1349 (Fed. Cir. 2015).

Tucker Act. SEKRI is the designated mandatory source of ATAP in the AbilityOne Program.[9] *SEKRI*, 152 Fed. Cl. at 745. SourceAmerica notified DLA early in the solicitation period that SEKRI is *the* mandatory source of ATAP in the AbilityOne Program. *Id.* at 749. Despite its awareness that SEKRI is the mandatory source, DLA opted to continue the competitive solicitation of bids for ATAP. *Id.* DLA thus knowingly violated its statutory and regulatory obligation under the JWOD Act and its implementing regulations to procure ATAP from SEKRI using the AbilityOne Program. *See Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *see also* 41 U.S.C. § 8504(a) (a contracting activity "shall procure" a product on the procurement list from a qualified nonprofit agency); 41 C.F.R. § 51–1.2(a) (the JWOD Act "mandates" that contracting activities procure products on the procurement list from a qualified nonprofit agency); *id.* § 51–5.2(a) ("Nonprofit agencies designated by the Committee are mandatory sources of supply for all entities of the Government for commodities and services included on the [p]rocurement [l]ist . . . ."); *id.* § 51–5.2(b) ("Purchases of commodities on the [p]rocurement [l]ist by entities of the [g]overnment shall be made from sources authorized by the Committee"); *id.* § 51–5.2(c) ("Contracting activities shall require other persons providing commodities which are on the [p]rocurement [l]ist to entities of the [g]overnment by contract to order these commodities from the sources authorized by the Committee.").

---

[9]    The government argued for the first time at oral argument that SEKRI is not a mandatory source of ATAP. Oral Arg. at 14:08–24:00. We find that argument forfeited. *Henry v. Dep't of Justice*, 157 F.3d 863, 865 (Fed. Cir. 1998) ("The government's argument . . . was raised for the first time at oral argument and comes too late.").

These circumstances suffice to qualify SEKRI as a prospective bidder for standing purposes under the Tucker Act.

The government argues that SEKRI does not qualify as a "prospective bidder" under the rubric established in this court's past cases. Specifically, the government contends that SEKRI failed to submit a bid during the bidding period as required under *Rex* and SEKRI failed to file an agency protest during the bidding period and thereafter diligently pursue its protest rights in the Court of Federal Claims, as required under *CGI*. *See* Appellee's Br. 9–10.

The cases identified by the government do not involve mandatory sources of commodities participating in the AbilityOne Program. Indeed, the AbilityOne Program is a complex system of government procurement that imposes specific obligations on the government, central nonprofit organizations, and nonprofit agencies that employ the blind and severely disabled. We decline the invitation to treat mandatory sources of commodities participating in the AbilityOne Program the same as other potential interested parties. SEKRI has already completed, for example, the process of initial qualification to participate in the AbilityOne Program, 41 C.F.R. § 51–4.2, and must undergo an additional, annual process to maintain its qualification, *id.* § 51–4.3. SEKRI therefore obtained the right to supply the government with ATAP by participating in the AbilityOne Program, not the competitive bidding route.

It is unreasonable to require mandatory sources such as SEKRI to openly compete in the competitive bidding process given Congress's intent to take participants in the AbilityOne Program out of the competitive process. *See, e.g.*, 83 Cong. Rec. 9111. In the competitive bidding process, procuring agencies solicit bids because they do not yet know which entity or entities will best be able to supply the product. Not so under the JWOD Act. Entities like SEKRI have established economic interest bona fides because they have been qualified under the AbilityOne Program and are

a mandatory source.  Congress has established that such entities must be prioritized over other commercial sources, absent special circumstances.  *See* 41 U.S.C. § 8504(a); *see also* 41 C.F.R. § 51–5.4 (providing for purchase exceptions); 48 C.F.R. § 8.706 (same).

In the context of competitive bidding, we have held that a bidder may "cease[] to be a prospective bidder" where it does not "pursue its rights in a diligent fashion."  *Cf. CGI*, 779 F.3d at 1351 (discussing *Rex*, 448 F.3d at 1307).  But it would not make sense to impose upon mandatory sources an affirmative obligation to monitor the federal government's solicitations to identify attempts to circumvent the AbilityOne Program and immediately bring agency protests, especially where the JWOD Act places an affirmative obligation on procuring agencies to determine whether the procurement is subject to a mandatory source.  Here, the onus is on the procuring agency, not the nonprofit agency participating in the AbilityOne Program.  *See* 41 U.S.C. § 8504(a) (requiring federal procuring agencies to procure certain goods from a qualified nonprofit agency under the AbilityOne Program); *see also* 41 C.F.R. §§ 51–1.2(a), 51–5.2.  This is not to say that procuring agencies have no way out of the JWOD procurement regime.  To lawfully procure the ATAP from a commercial source other than SEKRI through competitive bidding, the government should have obtained a purchase exception from SourceAmerica or the Committee.  *See* 41 C.F.R. § 51–5.4; 48 C.F.R. § 8.706.  The government does not show that it ever obtained, or even sought, a purchase exception.  On the record before us, therefore, the government was required to procure the ATAP from SEKRI using the appropriate process under the AbilityOne Program.  *See* 41 C.F.R. §§ 51–5.4, 51–6.1 (direct order process), 51–6.2 (allocation process); 48 C.F.R. §§ 8.705–2 (direct order process), 8.705–3 (allocation process).  In this respect, SEKRI was a "prospective bidder."

We conclude that SEKRI, as a qualified mandatory source in the AbilityOne Program, has standing as a

prospective bidder to bring its bid protest action in the Court of Federal Claims.

## II

The government also contends that SEKRI waived its bid protest rights under *Blue & Gold* and has therefore failed to state a claim. Appellee's Br. 14–26; *SEKRI*, 152 Fed. Cl. at 745. The government states that SEKRI's "belated protest fits squarely within the *Blue & Gold* rule" and that this presents a "classic" case of waiver. Appellee's Br. 15. We disagree.

We recently held that a bidder's "timely, formal challenge of the solicitation before [the agency] removes [a] case from the ambit of *Blue & Gold* and its progeny." *Harmonia Holdings Grp., LLC v. United States*, 20 F.4th 759, 767 (Fed. Cir. 2021).[10] *Harmonia* did not involve a mandatory source participating in the AbilityOne Program, but it is nevertheless instructive. Here, SEKRI, through SourceAmerica—early in the bidding period and shortly after SEKRI learned of the solicitation—gave notice to DLA that it was a mandatory source of ATAP participating in the AbilityOne Program. DLA confirmed its receipt of the SourceAmerica contact, and it responded with its determination that it would proceed with a competitive bid. Based on these facts, SEKRI satisfied its obligation under *Harmonia* to submit a "timely, formal challenge" of the solicitation. Thereafter, SEKRI filed its bid protest action before the Court of Federal Claims shortly after the close of the bidding period and prior to any award determination. SEKRI thus did not waive its right to bring its bid protest under *Blue & Gold*.

---

[10] The Court of Federal Claims issued its judgment in this case on March 9, 2021. This court issued its opinion in *Harmonia* on December 7, 2021.

We conclude that DLA's awareness during the bidding process that SEKRI is the mandatory source of ATAP removes this case from the application of the *Blue & Gold* standard of waiver. The government cites no case in which we have extended the requirements of *Blue & Gold* to mandatory sources of supply in the AbilityOne Program. That the government chose to ignore the potential violation of the JWOD Act does not give it a basis on which to claim that SEKRI has no standing. To do so turns the JWOD Act on its head. As a qualified, mandatory source of ATAP participating in the AbilityOne Program, SEKRI has the right to supply the ATAP separate and apart from the competitive bidding process, in accordance with the FAR, the JWOD Act, and its regulations. For these reasons, we reverse the judgment of the Court of Federal Claims that SEKRI waived its right under *Blue & Gold* to bring its bid protest action.

## CONCLUSION

We hold that SEKRI qualifies as a prospective bidder for standing purposes because DLA was aware during the bidding process that SEKRI is a mandatory source of ATAP in the AbilityOne Program. We also hold that SEKRI did not waive its bid protest rights under *Blue & Gold* because DLA was on notice, during the bidding process, that SEKRI is the mandatory source of ATAP in the AbilityOne program. Accordingly, we reverse the Court of Federal Claims' dismissal and remand for further proceedings consistent with this opinion. We have considered the parties' remaining arguments and find them unpersuasive.

## REVERSED AND REMANDED

### COSTS

Costs to appellant.